## U.S. BANKRUPTCY COURT
### District of South Carolina

Case Number:  **08-05103-jw**
Adversary Proceeding Number:  **14-80086-jw**

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

The relief set forth on the following pages, for a total of 22 pages including this page, is hereby ORDERED.

---

**FILED BY THE COURT**
**02/24/2015**



*John E Waites* (signature)

US Bankruptcy Judge
District of South Carolina

Entered: 02/25/2015

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Henrietta Scott Washington,<br><br>Debtor(s). | C/A No. 08-05103-JW<br><br>Adv. Pro. No. 14-80086-JW<br><br>Chapter 13 |
| Henrietta Scott Washington,<br><br>Plaintiff(s),<br><br>v.<br><br>Green Tree Servicing, LLC,<br><br>Defendant(s). | **ORDER** |

This matter is presently before the Court on Defendant Green Tree Servicing, LLC's Motion for Summary Judgment on each cause of action alleged in the Adversary Complaint filed by Plaintiff Henrietta Scott Washington ("Debtor") and Debtor's Motion for Partial Summary Judgment. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(E) and seeks a determination of the status of a lien asserted by Defendant Green Tree Servicing, LLC ("Green Tree") subsequent to the discharge granted in this Chapter 13 bankruptcy case on October 31, 2013. The lien at issue is also addressed in and central to Debtor's second Chapter 13 bankruptcy case, C/A No. 14–03836, filed July 3, 2014, which is currently before the Court. Pursuant to Fed. R. Civ. P. 52, which is made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052, the Court makes the following findings of fact and conclusions of law.[1]

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are so adopted.

## **FINDINGS OF FACT**

### **Debtor's First Chapter 13 Bankruptcy Case**

1.       On August 25, 2008, Debtor filed with this Court a voluntary petition for bankruptcy under Chapter 13, C/A No. 08–05103 ("First Case").

2.       On August 28, 2008, Green Tree filed a Proof of Claim setting forth a secured claim of $63,367.82 with interest at a rate of 9.5% and an unsecured claim of $268.19.  Green Tree cited "Money Loaned" as the basis for its claims and listed an amount of $1,825.21 as arrearage and other charges included in its secured claim at the time of Debtor's filing.  A 1996 Fleetwood mobile home owned by Debtor ("Mobile Home") was listed as the property securing Green Tree's claim. This Proof of Claim was amended on October 7, 2008 to include documents supporting perfection of Green Tree's interest in the Mobile Home.

3.       Debtor's Schedules and Statements filed September 4, 2008 listed Green Tree as a creditor holding a claim arising from a Retail Installment Contract and Security Agreement dated March 6, 1996 and secured by the Mobile Home.

4.       On March 2, 2009, Debtor filed an amended Chapter 13 plan which included a related motion to value Green Tree's secured claim regarding the Mobile Home at $19,500.00 ("Amended Plan").  Debtor's Amended Plan also provided for the following treatment of that secured claim:  "Payment of $388.43 or more per month, to Green Tree . . . until the value of the lien, plus 7.25% interest has been paid in full."  Debtor's Amended Plan also provided that

> [w]ith respect to secured claims being paid through the [P]lan, the holders of secured claims shall retain liens until the earlier of payment of the underlying debt, as determined by non-bankruptcy law, or discharge under 11 U.S.C. § 1328(a). . . .

> The terms of the [Debtor's] pre-petition agreement with a secured creditor shall continue to apply except as provided for in this [P]lan, the Order confirming the [P]lan or other Order of the Court. Completion of all [P]lan payments shall impose an affirmative duty on secured creditors paid under the [P]lan to satisfy liens as required by applicable law. . . . The [Debtor] is . . . responsible for protecting the non-exempt value of all property of the estate . . . .

Green Tree did not object to confirmation of Debtor's Amended Plan.[2]

5.    On March 9, 2009, this Court confirmed Debtor's Amended Plan ("Confirmation Order"). The Confirmation Order stated that under Debtor's Amended Plan "[s]ecured creditors retain their lien to the extent that it is not avoided or modified by specific court order or by [the Confirmation O]rder." Court records show service of the Confirmation Order on Green Tree. No party appealed the Confirmation Order.

6.    On July 21, 2011, Green Tree filed a Motion to Modify Stay or for Adequate Protection ("Motion to Modify Stay"). As grounds for its Motion to Modify Stay, Green Tree cited an absence of equity in the Mobile Home, Debtor's failure to reimburse Green Tree for insurance premiums incurred, and Debtor's failure to provide evidence of outside insurance coverage as required by the pre-petition agreement between Green Tree and Debtor. Green Tree requested relief from the automatic stay or, in the alternative, the provision of adequate protection by Debtor.

7.    Green Tree's Motion to Modify Stay was resolved by a consent settlement order entered by this Court on September 19, 2011 and later amended on October 21, 2011 ("Settlement Order"). The Settlement Order, as amended, required Debtor to maintain

---

[2] Debtor filed her first proposed Chapter 13 plan and initial motion to value Green Tree's claim on September 4, 2008. Shortly thereafter, on September 18, 2008, Green Tree filed an objection to confirmation of Debtor's September 2008 plan and the accompanying motion to value on the grounds that the plan did not adequately protect Green Tree's interests and proposed too low a value ($18,306.84) for the Mobile Home. Following multiple continuances of the confirmation hearing and several amendments to Debtor's proposed Chapter 13 plan, Debtor's Amended Plan and related motion to value Green Tree's lien at $19,500.00 were respectively confirmed and granted without objection.

continuous adequate insurance coverage on the Mobile Home and reimburse Green Tree for insurance premiums and attorneys' fees and costs within a set period of time. The Settlement Order allowed Debtor to retain the Mobile Home—which remained under lien to Green Tree pursuant to the Confirmation Order—if Debtor complied with the Settlement Order's terms.

8. On July 10, 2012, Green Tree filed and served on Debtor an affidavit asserting default under the terms of the Settlement Order due to Debtor's failure to remit the May 2012 arrearage payment to Green Tree for insurance premiums it advanced during Debtor's prior lapse in required coverage. Based on the Settlement Order's terms,[3] an order lifting the automatic stay was granted in favor of Green Tree shortly thereafter on July 13, 2012 ("Order Lifting Stay"). By entry of the Order Lifting Stay, the stay was terminated as to the Mobile Home, thereby permitting Green Tree to enforce its security interest and state law rights in the Mobile Home, including repossession.

9. As a result of the Order Lifting Stay and pursuant to the terms of Debtor's Amended Plan,[4] the Chapter 13 Trustee in Debtor's First Case ceased making payments to Green Tree on its claim related to the Mobile Home. The Trustee's last payment to Green Tree on the claim secured by the Mobile Home was made on July 2, 2012. Debtor did not file a motion to reconsider the Order Lifting Stay but continued to make her plan payments

---

[3] Debtor expressly waived the fourteen (14) day delay provided by Fed. R. Bankr. P. 4001(a)(3) and consented to any order granting relief from the stay becoming effective immediately upon entry if granted due to a default by Debtor under the Settlement Order's terms.

[4] The following language is included in Debtor's Amended Plan: "Any creditor holding a claim secured by property which is removed from the protection of the automatic stay, whether by judicial action, voluntary surrender, or through operation of the plan, will receive no further distribution from the chapter 13 trustee, unless an itemized proof of claim for any deficiency is filed within a reasonable time after the removal of the property from the protection of the stay. . . . Any funds that would have been paid to such creditor will be distributed to other creditors, unless the Court orders otherwise." Green Tree did not file a deficiency claim in Debtor's First Case and all funds remaining to be paid to Green Tree upon entry of the Order Lifting Stay were paid to other creditors.

to the Trustee pursuant to the Amended Plan's terms.  These payments were distributed to her other creditors.

10.    Debtor received a discharge in her First Case on October 31, 2013.  Green Tree did not object to the discharge.

11.    The Trustee's Final Report and Account filed November 26, 2013 reflects a total payment to Green Tree in Debtor's First Case of $14,007.30 in principal and an additional $3,673.20 in interest.  Green Tree's total allowed secured claim in the First Case of $19,500.00 was not paid in full.[5]

### Green Tree's State Court Action

12.    On April 4, 2014, nearly two years after entry of the Order Lifting Stay, Green Tree filed a Claim and Delivery Action in Beaufort County, South Carolina, C/A No. 2014–CP–07–0776, seeking to repossess Debtor's Mobile Home.[6]  Green Tree's complaint in the state court action alleges that Green Tree provided Debtor with notice of her default on the loan secured by the Mobile Home and an opportunity to cure delinquent payments, but Debtor failed to cure such default.

13.    The Claim and Delivery Action was stopped by Green Tree upon Debtor's filing of a second voluntary petition for bankruptcy under Chapter 13.

### Debtor's Second Chapter 13 Bankruptcy Case

14.    On July 3, 2014, Debtor filed with this Court a voluntary petition for bankruptcy under Chapter 13 of the Bankruptcy Code, C/A No. 14–03836 ("Current Case").

---

[5] Further mention of Green Tree's claims against Debtor shall refer only to the claim secured by the Mobile Home.  The Trustee's Final Report and Account references other secured claims held by Green Tree, but Debtor's Adversary Complaint and the cross-claims presently before the Court reference only the claim secured by Debtor's Mobile Home.

[6] During the course of Debtor's First Case, as noted above, the Mobile Home was removed from the protection of the automatic stay upon entry of the Order Lifting Stay on July 13, 2012.  The automatic stay was no longer in effect as to any property of Debtor subsequent to closure of her First Case on November 26, 2013.

15.    Debtor's Schedules and Statements in her Current Case, as amended on September 15, 2014, list Green Tree as a secured creditor of Debtor.  Schedule D states that the debt owed to Green Tree by Debtor in relation to the Mobile Home was discharged and, thus, extinguished through her First Case.  Debtor's Schedules and Statements were further amended on September 26, 2014, whereupon Green Tree was removed from Debtor's Schedule D list of secured creditors.

16.    On October 27, 2014, Green Tree filed a Proof of Claim listing "Money Loaned" as its basis and describing the property securing the claim as Debtor's Mobile Home.  Green Tree's Proof of Claim reflects a fixed annual interest rate of 9.5% on its total secured claim for $80,718.85, which is comprised in part of arrearages purportedly totaling $23,005.11.

17.    On October 29, 2014, Debtor filed an objection to Green Tree's October 27th Proof of Claim.  Debtor's objection argues that the purported debt owed to Green Tree and the purported lien on the Mobile Home securing that debt were extinguished as a result of the discharge in her First Case.  Debtor therefore argues that Green Tree's secured claim as reflected in the October 27th Proof of Claim should be disallowed in its entirety.

18.    On November 25, 2014, Green Tree filed its response to Debtor's objection stating that the issues raised by Debtor's objection should be resolved through the Court's ruling on the cross-motions for summary judgment in this Adversary Proceeding, as discussed below.

19.    On December 8, 2014, Green Tree filed an amended response to Debtor's objection restating its positions that the lien on Debtor's Mobile Home survived discharge in the First Case and that a hearing on Debtor's objection to Green Tree's claim would be

premature pending the outcome of this Adversary Proceeding.  Green Tree's amended response also notes that Green Tree intended to amend its Proof of Claim to reflect a reduced amount.

20.    Shortly thereafter, on December 9, 2014, Green Tree amended its Proof of Claim ("Amended Proof of Claim").  While the Amended Proof of Claim still lists "Money Loaned" as its basis and describes the property securing the claim as Debtor's Mobile Home, the amount of the claim is reduced to $5,492.70, with the same fixed annual interest rate of 9.5%, and does not purport to include any arrearages or other charges.  The figure of $5,492.70 presumably reflects the difference in amount between Green Tree's total allowed claim in Debtor's First Case ($19,500.00) and the principal actually received by Green Tree on that claim in the First Case prior to the entry of the Order Lifting Stay ($14,007.30).

21.    On January 20, 2015, the Court entered a consent order provided by Green Tree and Debtor regarding Debtor's objection to Green Tree's claim and confirmation of Debtor's proposed Chapter 13 plan.  Pursuant to this consent order, Green Tree and Debtor agreed that the existence and/or extent of Green Tree's lien on the Mobile Home and the nature of Green Tree's claim in Debtor's Current Case are contingent upon the resolution of the cross-motions for summary judgment presently before the Court.  To prevent delay in the payment to Debtor's other creditors, Green Tree and Debtor agreed that Debtor's Chapter 13 plan may be confirmed but subject to amendment, if necessary, to comport with the Court's ruling on these motions.

22.    On February 10, 2015, the Court confirmed Debtor's Chapter 13 plan as filed on October 27, 2014, subject to the terms of the above-referenced consent order.

**Adversary Proceeding**

23.     On August 15, 2014, shortly after filing her Current Case, Debtor filed an

Adversary Complaint in relation to her First Case requesting a declaratory judgment as to

the existence and extent of Green Tree's purported lien on the Mobile Home.[7]  Debtor's

Adversary Complaint also sets forth causes of action for Green Tree's willful, repeated

violations of the automatic stay and/or discharge injunction imposed by 11 U.S.C. §§ 362

and 524, respectively, as well as violations of the South Carolina Unfair Trade Practices Act

as set forth in South Carolina Code Ann. § 39–5–10, *et seq.* (1976) ("SCUTPA").  Debtor

requests the imposition of sanctions against Green Tree, an award of attorney's fees and

costs, and treble damages.

24.     On September 17, 2014, Green Tree filed its Answer to the Adversary

Complaint denying Debtor's allegations of violations of the automatic stay, discharge

injunction, and SCUTPA and also disputes Debtor's position that Green Tree does not

possess a valid lien against the Mobile Home.  Green Tree's Answer also sets forth various

affirmative defenses, including Debtor's failure to state a claim on which relief can be

granted pursuant to Fed. R. Civ. P. 12(b)(6), waiver, estoppel, unclean hands, and the

absence of any filing by Debtor to extinguish Green Tree's purported lien pursuant to 11

U.S.C. § 506(d).

25.     On October 27, 2014, the same date Green Tree's original Proof of Claim

was filed in Debtor's Current Case, Green Tree moved for summary judgment in this

Adversary Proceeding.  Green Tree's Motion for Summary Judgment and its Memorandum

---

[7] Debtor's allegations in the Adversary Complaint mirror the positions taken in her objection to Green Tree's Amended Proof of Claim filed in the Current Case; specifically, Debtor contends the debt owed to Green Tree and the lien on Mobile Home securing that debt were extinguished as a result of and upon discharge in the First Case.

in Support note that Green Tree received payments in Debtor's First Case totaling only $14,007.30 of its total allowed claim of $19,500.00 ("Motion for Summary Judgment"). Because it did not receive all payments as provided in the plan, Green Tree argues the conditions of 11 U.S.C. § 1327(c) did not apply to revest the Mobile Home to Debtor free and clear of Green Tree's lien upon discharge. While Green Tree agrees that Debtor's *in personam* obligation was extinguished by the discharge, it argues that the *lien* itself was *not* extinguished and remains enforceable *in rem*. Furthermore, Green Tree contends that its uncontested Motion to Modify Stay and the subsequent Order Lifting Stay in the First Case are *res judicata* and, as a result, Green Tree did not violate the discharge injunction imposed by 11 U.S.C. § 524 by filing its Claim and Delivery Action in state court. Additionally, Green Tree argues that it did not and has not violated the SCUTPA, because its state court action to repossess the Mobile Home was lawful and appropriate, particularly in light of the Order Lifting Stay which expressly allowed for Green Tree to enforce its security interest and state law rights in the Mobile Home.

26.     On November 3, 2014, Debtor filed a Motion for Partial Summary Judgment as to the Adversary Complaint's first cause of action for a declaratory judgment as to the status of Green Tree's lien on the Mobile Home subsequent to discharge in her First Case ("Motion for Partial Summary Judgment"). Debtor asserts that because Green Tree's secured debt was "provided for" in the First Case by her confirmed Amended Plan and she tendered to the Trustee the full amount of payments required by it, the October 31, 2013 discharge revested the Mobile Home in Debtor free of Green Tree's lien. Therefore, Debtor contends that her proposed Chapter 13 plan in her Current Case need not provide for payment of the claim filed by Green Tree in the amount of $5,492.70. Green Tree filed its

Reply to Debtor's Motion for Partial Summary Judgment on November 19, 2014.   On November 23, 2014, Debtor filed a surreply in opposition to Green Tree's Motion for Summary Judgment.

## CONCLUSIONS OF LAW

Debtor's Adversary Complaint sets forth the following requests and claims, upon all of which Green Tree has moved for summary judgment:

1. A declaration of the respective rights of the parties and existence and/or extent of Green Tree's purported lien on the Mobile Home under 11 U.S.C. §§ 1325(a)(5)(B)(i)(I), 1327(a), (b), and (c), and 1328;[8]

2. A declaration that the actions and conduct of Green Tree constituted repeated and willful violations of the automatic stay and/or the discharge injunction imposed by §§ 362 and 524, respectively;

3. A declaration that the actions and conduct of Green Tree constituted repeated and willful violations of the SCUTPA;

4. Imposition of sanctions and the award of damages, attorney's fees and costs, and other relief for violations of the discharge injunction; and

5. An award of treble actual damages and attorney's fees and costs for Green Tree's alleged violation of the SCUTPA.

Debtor has moved for summary judgment only on her first claim.  Green Tree has moved for summary judgment on all of the foregoing claims.

---

[8] Further references to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, shall be by section number only.

### I.    Summary Judgment Standard

Under Fed. R. Civ. P. 56, as adopted and applied to this Adversary Proceeding by Fed. R. Bankr. P. 7056, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718–19 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "[T]he burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." *Temkin*, 945 F.2d at 718–19 (citing *Anderson*, 477 U.S. at 247–48). In reviewing the facts and evidence produced by the parties, the Court must "draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997)) (citation and internal punctuation omitted). "[T]he court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Rossignol*, 316 F.3d at 523 (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

II.    **Green Tree's Motion for Summary Judgment**

    a.  **Existence and/or Extent of Green Tree's Purported Lien on Debtor's Mobile Home**

        i.  **Did Debtor's discharge in her First Case affect Green Tree's Lien on the Mobile Home?**

The issue before the Court on Debtor's first cause of action is whether Debtor's performance under her confirmed Amended Plan and the resulting discharge in her First Case pursuant to § 1328 extinguished Green Tree's lien—the *in rem* aspect of its claim—against Debtor's Mobile Home, thereby preventing Green Tree from pursuing its state court action to repossess the Mobile Home or having its claim allowed in Debtor's Current Case for the amount not paid out of its total allowed claim in the First Case. The analysis begins with § 1328(a), which provides that a "discharge of all debts provided for by the plan" is to be granted by the Court "as soon as practicable after completion by the debtor of all payments under the plan . . . ." The function and effect of discharge is set forth in § 524, which states that:

> [a] discharge in a case . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such debt as a *personal liability* of the debtor, whether or not discharge of such debt is waived . . . .

§ 524(a)(2) (emphasis added).

The parties agree and case law supports that Debtor's *personal liability* to Green Tree was extinguished by operation of the discharge pursuant to § 1328 and that any action by Green Tree against Debtor in her personal, individual capacity would constitute a violation of the discharge injunction established by operation of § 524. *See, e.g.*, *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) ("[A] discharge extinguishes *only* 'the personal

liability of the debtor.'") (quoting § 524(a)(1)); *In re Deutchman*, 192 F.3d 457, 460 (4th

Cir. 1999); *In re Tucker*, 516 B.R. 340, 345–46 (Bankr. W.D. Va. 2014) (citing *In re*

*Harlan*, 402 B.R. 703, 714 (Bankr. W.D. Va. 2009)).  The parties disagree as to the effect of

discharge on Green Tree's *in rem* rights.  However, the law is well settled that a lien passes

through bankruptcy despite discharge unless voided by a plan or court order.  *See, e.g.*,

*Home State Bank*, 501 U.S. at 82–83; *Deutchman*, 192 F.3d at 460; *In re Penrod*, 50 F.3d

459, 461–62 (7th Cir. 1995) ("The secured creditor does not, by participating in the

bankruptcy proceeding through filing a claim, surrender his lien.");  *In re Pennington-*

*Thurman*, 499 B.R. 329, 331–32 (B.A.P. 8th Cir. 2013) ("Although personal liability to pay

a debt does not continue, a discharge does not operate to extinguish a creditor's *in rem* rights

to foreclose against property in which it holds a lien.") (internal citations omitted); *Tucker*,

516 B.R. at 346; *In re Rountree*, 448 B.R. 389, 401–02 (Bankr. E.D. Va. 2011) ("Courts in

[the Fourth C]ircuit have long followed the principle that *in rem* claims survive the

bankruptcy discharge, while *in personam* claims are extinguished."); *In re Dendy*, C/A No.

00–05338–JW, slip op. at 7–8 (Bankr. D.S.C. May 5, 2008) (citing *Home State Bank*, 501

U.S. at 84 and *Ducker v. Standard Supply Co.*, 280 S.C. 157, 311 S.E.2d 728 (1984) in

support of the position that *in rem* actions against debtors remain viable subsequent to

discharge); *In re Robninson*, No. 05–2338, 2007 WL 1848016, at *4 (Bankr. N.D.W. Va.

June 25, 2007) ("[O]nly the debtor's personal liability for the payment of [a] debt is

discharged by the Bankruptcy Code.").

In Debtor's First Case, her confirmed Amended Plan provided that Green Tree's

allowed secured claim on the Mobile Home would be paid by monthly payments through the

Trustee of $388.43 or more "to Green Tree . . . until the value of the lien, plus 7.25% interest

[was] . . .  paid in full."  This explicit language required payments to Green Tree until its total allowed claim of $19,500.00 was satisfied.  The Amended Plan also required, as noted above, that the Trustee cease tendering monthly payments to Green Tree upon the entry of the Order Lifting Stay, which was done.  Therefore, Green Tree's total allowed claim based on a valuation of its lien of $19,500.00 was never paid in full.[9]  There is nothing in the statute or indicated by the evidence in the case that the discharge granted to Debtor in her First Case immunized her encumbered property—the Mobile Home—from *in rem* actions such as that attempted in state court by Green Tree.  Accordingly, the discharge granted to Debtor in her First Case pursuant to § 1328 did not function to extinguish Green Tree's lien against the Mobile Home.

### ii.   Was the Mobile Home revested in Debtor in the First Case free and clear of liens by operation of § 1327(c)?

Section 1327(b) vests all of the property of the bankruptcy estate in a debtor upon confirmation.  Section 1327(c) provides that "[e]xcept as *otherwise provided* in the plan or the order confirming the plan, the property vesting in the Debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan." § 1327(c) (emphasis added).  However, in this case, Debtor's Amended Plan ***otherwise provided*** that upon confirmation, "property of the estate will remain property of the estate,

---

[9] To the extent Debtor argues that certain equitable doctrines should prohibit enforcement of or altogether extinguish Green Tree's lien, the Court finds these arguments to be without merit.  While it is true that Green Tree did not initiate its state court action to repossess the Mobile Home until April 4, 2014—nearly two years after entry of the Order Lifting Stay and five months after discharge—the Court is unpersuaded that such a delay violates the principles of equity.  No provision of either the Settlement Order or the Order Lifting Stay required Green Tree to exercise its state law remedies against the Mobile Home by or before a certain date. Instead, as a result of Green Tree's delay, Debtor enjoyed extended use of the Mobile Home on which Green Tree held, and continues to hold, a valid and enforceable lien.  Furthermore, Green Tree's delay resulted in its loss of the benefit of filing an unsecured proof of claim during the life of the First Case for any deficiency in its claim.  Debtor's passive assertion of equitable defenses in her surreply to Green Tree's Motion for Summary Judgment is insufficient to create a genuine dispute of material fact with regard to any cause of action set forth in the Adversary Complaint.

but title to the property shall revest in [D]ebtor . . . [and w]ith respect to secured claims being paid through the [P]lan, the holders of secured claims shall retain liens until the earlier of payment of the underlying debt, as determined by non-bankruptcy law, or discharge under . . . § 1328(a)."  It is undisputed that the underlying debt owed to Green Tree, according to non-bankruptcy law, was not paid.  Additionally, as stated above, discharge under § 1328(a) did not extinguish the *in rem* rights of Green Tree.

While agreeing generally as to the *res judicata* effect of plan confirmation, the parties present opposing arguments about the effect of Debtor's default on the binding nature of the Amended Plan's provisions.  Green Tree argues that the *res judicata* effect of confirmation is negated where a debtor defaults under her plan and the creditor obtains relief from the stay.  In response, Debtor contends that the nonpayment of the full amount of Green Tree's allowed claim was not the result of any default by Debtor under the terms of her Amended Plan, but rather arose through the Trustee's cessation in payments to Green Tree after the entry of the Order Lifting Stay providing the relief requested under Chapter 3 of the Code.[10]  Debtor takes the position that the remedies provided under Chapter 13, including the revesting of property free and clear of liens pursuant to § 1327(c) and discharge pursuant to § 1328, are not in any way impacted by remedies provided under Chapter 3, such as relief from stay.  However, in the Court's view, neither party's argument is correct as stated.

---

[10] Debtor also argues that the cessation in payments to Green Tree did not occur at the fault of Debtor, but rather through the unilateral action of the Trustee which, in Debtor's mind, should not constitute default under the Amended Plan's terms. This argument disregards the express language of Debtor's Amended Plan which required the Trustee to stop making payments to Green Tree subsequent to the Order Lifting Stay; Debtor knew or should have known that payments to Green Tree would stop after relief was granted and cannot now feign ignorance of this particular provision of her Amended Plan with which the Trustee properly complied.

A basis for Green Tree's Motion to Modify Stay in Debtor's First Case was a failure by Debtor to provide the insurance coverage necessary to protect the value of the Mobile Home and required under the parties' pre-petition agreement. Debtor's Amended Plan clearly states that "[t]he terms of the [Debtor's] pre-petition agreement with a secured creditor shall continue to apply except as provided for in this [P]lan, the Order confirming the [P]lan or other Order of the Court. . . . The [Debtor] is . . . responsible for protecting the non-exempt value of all property of the estate . . . ." This language contemplates that Debtor perform the requirements of the parties' pre-petition agreement while Green Tree, the secured creditor, was being treated by and paid under the Amended Plan. Debtor's compliance with such a pre-petition agreement was an express requirement of her Amended Plan; a failure to meet this requirement constituted a default under the Amended Plan's terms. The Plan language also recognizes that an order granting relief from the stay would allow a secured creditor like Green Tree to enforce its lien without being constrained by Debtor's otherwise ongoing bankruptcy case. By acknowledging this effect of stay relief, the Amended Plan impliedly recognized that a secured creditor receiving relief from stay would not lose its lien, but rather would be permitted to act upon it through exercise of the creditor's *in rem* rights against the subject property. The lien enforcement permitted upon stay relief is not restricted by the Amended Plan's proposed payment terms or valuation; rather, this process served as an alternative to the Plan payments over time which would have been received by the secured creditor but for the grant of relief. Contrary to Green Tree's argument, the Amended Plan remained binding on Green Tree subsequent to stay relief to the extent the Plan language allowed for a creditor in Green Tree's position to return for payment of any unsecured deficiency, if such a claim were to be filed within a reasonable time. Regardless of whether Green Tree filed a deficiency claim in

Debtor's First Case, any outstanding *personal liability* owed to it by Debtor was discharged pursuant to § 1328; the *in rem* rights against the Mobile Home remained, as discussed above. Debtor is incorrect in her position that § 1327(c), as altered by the language of the Amended Plan, operated to revest the Mobile Home in Debtor free and clear of the very same lien which the Amended Plan expressly recognized as enforceable by Green Tree outside of the bankruptcy case upon receiving relief from stay. The Court disagrees with Debtor's additional argument, as stated above, that the relief afforded under Chapter 13 of the Code with regard to discharge is entirely independent and uninfluenced by stay relief, which is governed by Chapter 3 of the Code in this case.

Finding there is no genuine dispute of material fact as to Debtor's first cause of action and based on the Court's conclusions with respect to the effects of §§ 524, 1327, and 1328 on the existence of Green Tree's lien against Debtor's Mobile Home, Green Tree's Motion for Summary Judgment as to Debtor's first cause of action set forth in the Adversary Complaint is hereby granted.

### iii.  Is Green Tree's remaining lien on the Mobile Home a basis for its Amended Proof of Claim filed in Debtor's Current Case?

Green Tree's *in rem* rights against the Mobile Home constitute a "claim" under the Bankruptcy Code's broad definition of the term as set forth in § 101(5). *See, e.g.*, *Home State Bank*, 501 U.S. at 83–84; *In re Glance*, 487 F.3d 317, 321 (6th Cir. 2007) ("If . . . a lien is a 'claim against the debtor,' then it follows, under the Code's equivalent treatment of the terms, that a lien is a 'debt' owed by the debtor.") (citing *Home State Bank*, 501 U.S. at 84–86); *In re North*, No. 11–72843, 2012 WL 4919788, at *2 (Bankr. N.D. Cal. Oct. 15, 2012). Green Tree's Amended Proof of Claim reflects only the amount left outstanding on its total allowed claim from Debtor's First Case which went unpaid due to Debtor's default.

Debtor knew or should have known that under the express terms of her Amended Plan, she was required to protect the value of the Mobile Home and abide by the terms of her pre-petition agreement with Green Tree requiring insurance coverage on the Mobile Home. Debtor also knew or should have known that the Trustee was required to cease payments to Green Tree upon the entry of the Order Lifting Stay. Being aware of the cessation in payments to Green Tree, Debtor could have sought the consent of Green Tree and the Trustee to obtain an order from this Court allowing for resumption of Trustee payments to Green Tree in order to pay the full value of its lien as provided for under the Amended Plan. *See* SC LBR 4001–1(a)(5). Instead, Debtor enjoyed continued use of the Mobile Home while Green Tree received only a portion of its total allowed claim, the entirety of which Debtor agreed (but failed) to pay under the Amended Plan. Therefore, Green Tree's remaining lien may serve as a basis for its claim in Debtor's Current Case.

### b. Repeated and Willful Violations by Green Tree of the Automatic Stay Imposed by § 362 and the Discharge Injunction Provided by § 524

Upon the Court's entry of the Order Lifting Stay in favor of Green Tree on July 13, 2012, the automatic stay imposed by § 362 was terminated as to Debtor's Mobile Home, thereby allowing Green Tree to enforce its security interest and state law rights in Mobile Home, including repossession. Green Tree acted in accordance with the Order Lifting Stay and, therefore, cannot be said to have violated the automatic stay which, by operation of the same Order, no longer applied to the Mobile Home during the life of Debtor's First Case. Additionally, certain of Green Tree's allegedly violative actions took place in April of 2014, nearly five months after the close of Debtor's First Case. The closing of the First Case caused the automatic stay to expire as a matter of law. *See* § 362(c)(2). Therefore, Debtor's allegation that Green Tree's state court action against the Mobile Home in 2014 was a

violation of § 362 is without merit.  By operation of law, the stay was not applicable to the Mobile Home at the time of Green Tree's state court action.

Furthermore, the nature of Green Tree's state court action against Debtor involved efforts to repossess the collateral secured by a valid lien.  There is no evidence before the Court on these cross-motions that would suggest Green Tree commenced the state court action to enforce Debtor's otherwise discharged *personal liability*.  Debtor, as the non-moving party, has not put forth specific facts demonstrating otherwise. For the reasons referenced above, Green Tree's state court *in rem* action against the Mobile Home and the subsequent filing of its Amended Proof of Claim in the Current Case seeking payment on the claim arising from its valid lien were and are not, respectively, violative of the discharge injunction provided by § 524.  Therefore, Green Tree's Motion for Summary Judgment on the second cause of action set forth in Debtor's Adversary Complaint is hereby granted.

### c.  Repeated and Willful Violations by Green Tree of the SCUTPA

Based on the foregoing conclusions with respect to Green Tree's actions subsequent to the entry of the Order Lifting Stay, the Court finds no evidence creating any genuine dispute of material fact as to whether Green Tree, through its state court action or otherwise, engaged in unfair or deceptive conduct in violation of the SCUTPA.  Green Tree has set forth facts in its Motion for Summary Judgment which indicate the absence of a genuine dispute of material fact as to this cause of action.  Debtor, as the non-movant, has not set forth specific facts to counter those provided by Green Tree.  Therefore, Green Tree's Motion for Summary Judgment on Debtor's third cause of action as set forth in the Adversary Complaint is hereby granted.

### d.  Debtor's Requests for Damages

In light of the Court's conclusions set forth above finding in favor of Green Tree on its Motion for Summary Judgment on Debtor's first, second, and third causes of action, the issues of damages arising from those claims, as requested in Debtor's fourth and fifth causes of action, are moot.  As a result, Green Tree's Motion for Summary Judgment on Debtor's fourth and fifth causes of action as set forth in the Adversary Complaint is hereby granted.

### III.  Debtor's Motion for Partial Summary Judgment

As described in detail above, the Court finds that Green Tree possesses a valid and enforceable lien against the Mobile Home.  Therefore, Debtor's Motion for Partial Summary Judgment on the first cause of action set forth in the Adversary Complaint is hereby denied.

### <u>CONCLUSION</u>

The discharge granted to Debtor in her First Case extinguished only Debtor's *in personam* liability to Green Tree.  Green Tree therefore possesses a valid and enforceable lien on the Mobile Home through the remaining *in rem* obligation which was not extinguished by the discharge.  The actions taken by Green Tree subsequent to the Order Lifting Stay and the grant of discharge were not and are not violative of the automatic stay imposed by § 362 or the discharge injunction provided by § 524.  Furthermore, no evidence presently before the Court creates a genuine dispute of material fact as to the lawfulness of Green Tree's actions to the extent such actions are governed by the SCUTPA.  As a result of these findings, the Court need not reach the issues of whether Debtor is entitled to various forms of sanctions and/or damages arising from the first three causes of action set forth in the Adversary Complaint.  Therefore, Green Tree's Motion for Summary Judgment on all causes of action set forth in Debtor's Adversary Complaint is hereby **GRANTED** and

Debtor's Motion for Partial Summary Judgment is hereby **DENIED**.  In light of this ruling, the parties are instructed to comply with the terms set forth in the consent order entered by this Court on January 20, 2015 in Debtor's Current Case within fourteen (14) days of the entry of this Order.

**AND IT IS SO ORDERED.**